UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

SAMIR REDZEPAGIC,

                         Plaintiff,                      Index No. 17-CV-466
                                                      (WFK-SMG)

-against-

EDWARD M. RABIN *et al.*                           **COUNTERCLAIM**

                        Defendants.

-------------------------------------------------------------------x

       Defendants Edward M. Rabin; Rabin Management, LLC; and Solel Realty Co., Inc.; by their attorneys Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Caron, LLP, allege as follows:

Nature of Action

       1.     This action is a counterclaim to a complaint brought by Samir Redzepagic on May 5, 2017.

       2.     Defendants Edward M. Rabin et al. were Plaintiff's employer from March 19, 2015 – May 28, 2015.

       3.     During that time, Plaintiff worked as a building superintendent under Defendant/Counterclaimants' collective bargaining agreement with Local No. 2 Building Services Employees and Factory Workers USWU, IUJAT.

       4.     For the seventy-one (71) days Mr. Redzepagic was employed by Defendants, he was entitled to and received an apartment for use during his term of employment.

5.      When Plaintiff Redzepagic was terminated on May 28, 2017, he refused to vacate the apartment in which he was possession by virtue of his employment.

6.      In fact, Mr. Redzepagic remained in the premises until Defendant/Counterclaimants brought an action and had him evicted from the property on December 1, 2015.

7.      This counterclaim seeks compensatory damages for the cost of the eviction, the rental value of the apartment Mr. Redzepagic occupied for 5 months following his legal occupation, and the expenses incurred both as a result of the Plaintiff's failure to perform his contractual duties during his employment, as well as Counterclaimants' inability to secure a new resident superintendent while Mr. Redzepagic held the apartment unit hostage.

## Factual Background

8.      Samir Redzepagic filled out an application for employment with Rabin Management LLC on March 11, 2015. His application stated that he was 20, married, expecting a child on May 5, and unemployed.

9.      On March 17, 2015, Rabin Management spoke with Mr. Redzepagic's reference, a former employer, who said the applicant was smart and hard-working.

10.     Rabin Management offered Mr. Redzepagic a position which he started on March 19, 2015. The position paid $725.00 semi-monthly and provided a 2-bedroom residence for the employee and his family, valued at $1,727.00 per month as of April 1, 2015, plus utilities. On the same day, Mr. Redzepagic was given

2

occupancy of apartment A3 at 1013 Avenue J, Brooklyn, New York.  Mr. Redzepagic was informed that he was legally required to reside in the building as a condition of the employment and that the unit is the designated apartment for that purpose.

11.     1013 Avenue J is a multiple dwelling of more than 9 units and is therefore required to have a resident superintendent as per the New York City Administrative Code.  Unit A3 is registered with the New York State Division of Homes and Community Renewal as the building superintendent's apartment.

12.     On March 23, 2015, Mr. Redzepagic signed an agreement with Rabin Management, acknowledging, inter alia, the following:

     a.     That the building will be operated and maintained solely by one (1) person;

     b.     That a labor contract with Local 2, New York State Independent Union, Building Service Employees and Factory Workers is in effect for the subject building;

     c.     The "Essential Job Functions Of The Building Superintendent".

13.     Because of Mr. Redzepagic's concerns over the volume of work, he negotiated with Mr. Edward Rabin an additional payment of $125.00 to Mr. Redzepagic with every paycheck.

14.     The Collective Bargaining Agreement governing Mr. Redzepagic's position reads, in pertinent part, at Schedule B, Section 1, "Working Superintendent; Wages, Days off and Conditions…..I(b)…the present practices of the building with regard to the duties of the superintendent shall be continued and

as heretofore the superintendent shall take care of emergencies.  A superintendent who is required to perform other than emergency work on his day or half day off shall receive by mutual agreement of the Employer and the superintendent, equivalent time off or a day or half day's pay..."

15.     On April 1, 2015, E & S General Construction ("E & S") arrived at 1013 Avenue J to install security cameras throughout the building.  Mr. Redzepagic was unreachable at the time, his whereabouts unknown.  This occurred on repeated occasions during the 2-week installation.  Mr. Redzepagic made himself unavailable despite having the only key to the Superintendent's shop to which access was required to install the camera system.

16.     On April 2, 2015, Rabin Management had to contact E & S to admit an elevator mechanic to do repairs in the building because Mr. Redzepagic was unreachable and absent from the premises without notice.

17.     On April 15, 2015, E & S returned to complete the camera installation started on April 1.  E & S notified Defendant/Counterclaimants that Mr. Redzepagic was unreachable and absent from the premises, having provided no notice to Rabin Management.

18.     On May 6, the Contractor handling the E2 clean-up attempted to locate Mr. Redzepagic regarding the readiness of apartment E2. Mr. Redzepagic was unreachable and absent from the premises, having provided no notice to Rabin Management.

4

19.     On Friday May 8, 2015, in response to tenant complaints about the unsanitary conditions of the building compactor rooms, Rabin Management hired E & S to clean the building, and sanitize the compactor rooms.  Mr. Redzepagic was unreachable and absent from the premises, having provided no notice to Rabin Management.

20.     Again, on May 10, 2015, in response to tenant complaints about the unsanitary conditions of the building compactor rooms, Rabin Management hired E & S Contracting to clean the building, and sanitize the compactor rooms.  Mr. Redzepagic was unreachable and absent from the premises, having provided no notice to Rabin Management.

21.     On Monday, May 11, 2015, a child was born to Mr. Redzepagic and his wife.  E & S was hired to handle the cleaning of the building and other superintendent responsibilities as Mr. Redzepagic was not able to be at the building.

22.     Mr. Redzepagic was at the hospital with his wife and absent from the building without notice to the management company on May 12, 13, 14, and 15.

23.     On Tuesday, May 26, 2015, Counterclaimants received several tenant complaints regarding the building's unsanitary condition.  E & S was unable to locate Mr. Redzepagic when he was called by Rabin Management to look into the conditions and speak to Mr. Redzepagic.  In addition, there were several days of refuse and garbage that needed to be removed from the compactor closets on each of

the six floors of the subject premises, as well as garbage that had accumulated in the compactor chute that reached to the second floor. E & S performed the clean-up of these conditions. Defendant/Counterclaimants later learned that Mr. Redzepagic had left the building unattended for the Memorial Day weekend and had not notified Rabin Management.

24.     On Wednesday, May 27, 2015, Edward M. Rabin went to the building and determined that Mr. Redzepagic was nowhere to be found. There were 3-4 days of garbage accumulated but not put out.

25.     On May 28, 2015, Edward M. Rabin returned to the building to locate Mr. Redzepagic. Mr. Redzepagic was again nowhere to be found. Mr. Redzepagic was terminated from his employment by letter handed to him personally by Edward M. Rabin later that day.

26.     The total costs to cover Mr. Redzepagic's responsibilities by E & S during the term of Mr. Redzepagic's employment was $1,790.00.

27.     On June 4, 2015, Mr. Redzepagic met with Edward M. Rabin and indicated that he had no money to move and could not vacate the apartment.  Mr. Redzepagic said that he had found a place to go but needed $5,100.00 to leave, plus "moving expenses".

28.     On June 12, 2015, Mr. Redzepagic was given notice that he was to vacate the premises by Sunday, June 28, 2015, by 5:00pm.

28.     On June 23, 2015, Mr. Redzepagic sent an email to Rabin Management staff stating that he had spoken with a lawyer and that he believed he was due money.  He further stated that he would be moving July 1 but that he expected money before he would vacate and return the keys to apartment A3.

29.     On Tuesday, June 30, 2015, Mr. Redzepagic and his family still occupied apartment A3.  When E & S principal Sohail Khan asked Mr. Redzepagic when he would be returning the keys to apartment A3, Mr. Redzepagic said that he has no problem returning the keys but only "as soon as I get the money I am owed".

30.     On Wednesday, July 8, 2015, Mr. Redzepagic was still in possession of unit A3 and was served with a Notice to Quit Licensee, giving Mr. Redzepagic until July 25 to vacate the premises.

31.     On Tuesday, July 27, 2015, Mr. Redzepagic was still in possession of unit A3.  Edward Rabin and Solel Realty filed a "Holdover Petition" in Kings County Supreme Court.

32.     On Wednesday, September 2, 2015 Rabin Management contacted Mr. Redzepagic about apartment A3.  He said that he was no longer living in the apartment. When asked if he was going to return the keys, Mr. Redzepagic declined to do so and continued to retain possession.

33.     On Friday, September 11, 2015, Mr. Redzepagic called Defendant/Counterclaimants' office and stated that he had vacated the apartment,

wanted to return the keys, and settle the Holdover proceeding. He further stated that he had hired an attorney. Mr. Redzepagic was told to have his attorney appear in the Holdover proceeding. Neither Mr. Redzepagic nor any counsel ever appeared in the Holdover proceeding and the keys to apartment A3 were not surrendered during the pendency of that proceeding.

34.    On Tuesday, December 1, 2015, the Marshal of the City of New York took possession of apartment A3 and returned legal possession and control of the subject premises to the Counterclaimants, who had also continued to pay for all utilities in the unit during the Plaintiff's holdover tenancy.

35.    The costs and attorneys' fees to evict Mr. Redzepagic totaled $1,901.33.

36.    From May 28, 2015 to December 1, 2015, Counterclaimants were unable to place a resident superintendent in the subject premises.

37.    From May 28, 2015 to December 1, 2015, Counterclaimants had to hire E & S to fill the duties of a resident superintendent. The total cost of that maintenance was $17,700.00.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (RENT IMPLIED BY TENANT'S OCCUPATION)

38.    Counterclaimants repeat and re-allege paragraphs 1-37 of this Counterclaim as if fully set forth herein.

39.    Samir Redzepagic was a licensee of the premises located at apartment A3 of 1013 Avenue J; Brooklyn, New York beginning March 19, 2015.

8

40.     On May 28, 2015, Mr. Redzepagic became a tenant of the premises of which Counterclaimants are the landlord.

41.     On June 30, 2015, Mr. Redzepagic became a holdover tenant of the premises.

42.     Mr. Redzepagic, without written consent or contract, retained use and occupation of the premises until December 1, 2015.

43.     The comparable rent stabilized value of the subject premises at the time was $1,727.00 per month.

44.     Mr. Redzepagic owes rent for the occupancy and use of the subject premises in the amount of $8,635.00.

## AS AND FOR THE SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT CAUSING DAMAGE)

45.     Counterclaimants repeat and re-allege paragraphs 1-44 of this Counterclaim as if fully set forth herein.

46.     Samir Redzepagic entered into a contract on March 23, 2015 with Counterclaimants, to provide certain delineated services.

47.     In consideration of the work to be performed, Counterclaimants provided housing, salary, and union benefits to Mr. Redzepagic.

48.     Mr. Samir Redzepagic failed to perform the services promised under the contract.

49.     As a result of Mr. Redzepagic's failure to perform his duties under the contract, Counterclaimants suffered costs to cover in the amount of $1,790.00.

9

## AS AND FOR THE THIRD CAUSE OF ACTION
### (PROMISE CAUSING DETRIMENTAL RELIANCE)

50.     Counterclaimants repeat and re-allege paragraphs 1-49 of this Counterclaim as if fully set forth herein.

51.     Mr. Samir Redzepagic entered into a clear and unambiguous contract with Counterclaimants on March 23, 2015.

52.     The contract was clear: That Counterclaimants would rely on Mr. Redzepagic, and Mr. Redzepagic alone, to handle the maintenance and cleaning of the premises located at 1013 Avenue J; Brooklyn, New York. In exchange, Mr. Redzepagic would receive a salary and an apartment for the duration of his employment at the property.

53.     Further, the contract is clear that, upon termination, Mr. Redzepagic had 30 days in which to vacate the premises.

54.     Mr. Redzepagic neither fulfilled his obligations as the superintendent of the premises nor as a resident of apartment A3 after June 30, 2015.

55.     As a result of Mr. Redzepagic's failure to keep his promises under the contract, Counterclaimants incurred damages in the amount of $1,790.00 for the work Mr. Redzepagic promised to perform while he was an employee, as well as $19,601.33 for the promise Mr. Redzepagic failed to keep by refusing to vacate the premises.

WHEREFORE, Defendants/Counterclaimants Edward M. Rabin; Rabin

Management, LLC; and Solel Realty Co., Inc. pray for the following relief against

the Defendant:

i.      Compensatory damages in the amount $30,026.33;

ii.     Costs and attorneys' fees;

iii.    Any and all other relief which this Court deems just and proper.

Dated:      Brooklyn, New York
            August 31, 2017


ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO, FERRARA &
WOLF, LLP
Attorneys for Defendants/Counterclaimants

By: _____

    Rachel Demarest Gold, Esq.      .
    One MetroTech, Suite 1701
    Brooklyn, New York 11201
    Tel. (718) 215-5300
    Fax: (718) 215-5304

**VERIFICATION**

STATE OF NEW YORK )

) SS.:

COUNTY OF KINGS )

**EDWARD M. RABIN**, being duly sworn, deposes and says:

I am a member of Rabin Management, LLC and a member of Solel Realty Co., LLC.

I have read the foregoing Verified Complaint and know the contents thereof; and the contents are true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

I further state that the reason this verification is made by me and not by Rabin Management, LLC and Solel Realty Co., LLC is that said parties are limited liability companies, and the grounds of my belief as to all matters in this action not stated upon my own knowledge are investigations which I have caused to be made concerning the subject matter of this litigation and information acquired by me in the course of my duties as a members of said limited liability companies, and from the books and papers of said limited liability companies.

Rabin Management, LLC and Solel Realty Co., LLC

By:  EDWARD M. RABIN

Sworn to before me this

_31_ day of August, 2017.

FRANCES L. PIRO
Notary Public, State of New York
No. 24-4943815
Qualified in Kings County
Commission Expires // / 7 / / 8